```
          UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF WEST VIRGINIA
                 AT CHARLESTON
```

REBECCA S. CHARLES,
SARAH N. HALL, and
MARY K. MORRIS,

    Plaintiffs,

v.                         Civil Action No. 2:16-CV-10334

STATE OF WEST VIRGINIA OFFICES
OF THE INSURANCE COMMISSIONER,

    Defendant.

## ORDER

Pending is the parties' joint motion for approval of a settlement agreement, filed November 28, 2018.

## I. Background

Plaintiffs, three female administrative law judges employed by the defendant, the State of West Virginia Offices of the Insurance Commissioner ("WVOIC"), filed this action on November 1, 2016, alleging that they are paid less than their male counterparts in violation of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d). Defendant denied discrimination and filed a motion for summary judgment on August 24, 2018, blaming the salary discrepancy on gender-neutral factors including the State of West Virginia "Pay Plan Policy," the

1

market conditions at the time of hiring, and salary increase "freezes" in place during plaintiffs' employment.

In March 2018, the parties began settlement negotiations and underwent unsuccessful mediation.  The parties resumed negotiations in October 2018, which culminated in settlement agreements being reached between all parties during a settlement conference held October 12, 2018.

The terms of the agreements, in brief, award plaintiffs Charles and Morris $20,000 each, and plaintiff Hall $15,000, in consideration for their agreement to release the WVOIC and related parties from "any and all claims, liability, damages, suits, actions, or causes of action of any kind or nature, whether now arisen or hereafter to arise, that relate in any way to [their] compensation with the [WVOIC.]"  This amount constitutes lost wages, and "the employer will take all required withholdings."  Plaintiffs' economic loss expert had previously calculated actual backpay loss, in comparison to the highest paid male administrative law judge, as: $30,777.00 for plaintiff Charles, $35,311,00 for plaintiff Morris, and $24,515.00 for plaintiff Hall.  The agreed payment to the plaintiffs as a group exceeds sixty percent of their expert's projections.

The agreements also award the plaintiffs' attorneys, Mark A. Toor and Todd S. Bailess, a sum of $45,000.00 which includes reimbursement of costs and litigation expenses of

$12,057.36[1] and attorney fees of $32,942.64.  As will be noted, the attorney fees are well below their usual fees which would come to $59,615.00.

## II.  Discussion

The Equal Pay Act, 29 U.S.C. § 206(d), was enacted in 1963 as an amendment to the Fair Labor Standards Act ("FLSA"), to rectify perceived gender-based wage disparities.  Its provisions are mandatory, and "the unsupervised waiver or settlement of [FLSA] claims" is prohibited.  <u>Taylor v. Progress Energy, Inc.</u>, 493 F.3d 454, 460 (4th Cir. 2007); <u>see also</u>, <u>e.g.</u>, <u>Barrentine</u>, 450 U.S. at 740 (1981) ("This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to . . . overtime pay under the Act.  Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived[.]"); <u>Wolinsky v. Scholastic Inc.</u>, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (noting that unsupervised settlement is prohibited for fear that employers would coerce employees into waiving or settling their claims).  As a result, FLSA claims may only be settled if the settlement is supervised by the Department of Labor or approved by a court after the agreement has been scrutinized for fairness.  <u>Taylor v. Progress Energy, Inc.</u>, 415 F.3d 364, 374

---

[1] The $12,057.36 includes filing fee and service of process of $487.60, mediator's fee of $1,005.33, and plaintiff's expert fee of $9,468.00.

3

(4th Cir. 2005); see also Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982) (citing D.A. Schulte, Inc. v. Gangi, 328 U.S. 108 (1946)).

The court must ensure, first, that the settlement "'reflect[s] a . . . compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute,'" Kianpour v. Rest. Zone, Inc., No. 11-0802, 2011 WL 5375082, at *2 (D. Md. Nov. 4, 2011) (quoting Lopez v. NTI, LLC, 748 F.Supp.2d 471, 478 (D. Md. 2010)), rather than serving as "a mere waiver of statutory rights brought about by an employer's overreaching," Lynn's Food Stores, 679 F.2d at 1354. See also Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 703 (1945) (asking "whether respondent's release was given in settlement of a bona fide dispute between the parties with respect to coverage or amount due under the Act or whether it constituted a mere waiver of his right to liquidated damages").

Here, a legitimate dispute exists as to the basis for the plaintiffs' salaries being lower than their male counterparts. The facts demonstrate a long-standing discrepancy, with several less experienced male administrative law judges earning more than the plaintiffs, yet the defendant, in its motion for summary judgment, proffered plausible nondiscriminatory reasons for the discrepancy. Accordingly, a genuine dispute remains and a settlement of plaintiffs' claims

for an appropriate amount of back wages is plainly a "compromise over issues[,]" Lynn's Food Stores, 679 F.2d at 1354, and not "a mere waiver of [their] right[s] to liquidated damages," Brooklyn Sav. Bank, 324 U.S. at 703.

As for determining whether the proposed settlement agreement is fair and reasonable, the court considers: (1) the extent of discovery that has taken place; (2) the stage of the proceedings; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of counsel whether expressed directly or through failure to object; and (6) the probability of the plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery. See Harper v. ELK Run Coal Co., Inc., No. 11-305, 2012 WL 1999429, at *3 (S.D. W. Va. June 4, 2012) ("While the Fourth Circuit has not directly addressed the factors to consider in determining whether a settlement reached in an FLSA case is fair and reasonable, federal courts typically consider the fairness factors utilized in determining court approval of class action settlements under Federal Rule of Civil Procedure 23(e).").

Here, the parties have exhausted the discovery period set forth in the court's scheduling order, and trial is scheduled to begin on January 8, 2019. They have, upon advice of counsel, knowingly and voluntarily entered into the

settlement agreement, and there is no evidence of fraud or collusion.  Plaintiffs' counsel are experienced trial lawyers and litigators, no doubt competent as to the FLSA and adequate settlement procedures, and none of the lawyers involved in drafting the settlement agreement has objected to it.  With respect to the sixth element, the parties have explained that the settlement figure is designed to compensate the plaintiffs for lost wages when compared to the higher salaries of their male counterparts.  The court finds the settlement amount, in light of its proximity to the amount of backpay set forth by the plaintiffs' expert, see I., supra, to be reasonable.  Accordingly, the court concludes that the settlement agreement is fair and reasonable, and that the amounts the plaintiffs will receive is appropriate.

Finally, although neither the FLSA nor Fourth Circuit precedent necessarily requires such review, district courts in the Fourth Circuit tend to evaluate the parties' agreement as to attorneys' fees.  See, e.g., Duprey v. Scotts Co. LLC, 30 F.Supp.3d 404, 411 (D. Md. 2014); Hernandez v. La Flor De Mayo Bakery, Inc., No. CV CBD-15-1430, 2016 WL 25886 (D. Md. Jan. 4, 2016); Pina v. Pakalex Inc., No. CV TDC-15-0638, 2015 WL 7294369 (D. Md. Nov. 18, 2015); Kianpour v. Rest. Zone, Inc., 2011 WL 5375082.  This review is undertaken chiefly to ensure that any negotiation of attorneys' fees did not damage plaintiff's settlement, and to confirm that the fees received by plaintiffs'

counsel are reasonable and comparable to those awarded to prevailing plaintiffs under the FLSA. Kianpour v. Rest. Zone, Inc., 2011 WL 5375082, at *3; see also Dees v. Hydradry, Inc., 706 F.Supp.2d 1227, 1243; see also 29 U.S.C. § 216(b) (stating that a court must allow reasonable attorneys' fees to a prevailing plaintiff).

The Fourth Circuit has provided a list of factors to "be considered" where "a determination of reasonable attorneys' fees . . . is necessary." Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978). Although, as noted above, the review of fees is not strictly "necessary" in this case, the Barber factors will nevertheless aid the court in its analysis:

> These include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Barber, 577 F.2d at 227.

Here, the parties have agreed that plaintiffs' counsel will be compensated $45,000, inclusive of costs and litigation

expenses, for their work on this case. Plaintiffs' counsel has submitted records reflecting appropriate expenditure of time on activities related to the case. The factual development undertaken in this matter, including a number of depositions and detailed review of corporate policies and records, as well as the application of governing law to the facts discovered, presented some difficulty and required significant skill. The court can only assume, given counsel's considerable experience in this field of the law, that this case was undertaken at the expense of working on other cases. As counsel recorded 182.4 hours of work on this case, their effective fee of $32,942.64 represents $180.60 per hour, which is a modest and quite reasonable rate given the quality and sophistication of counsel's work and fees in similar cases. It is also a very significant discount from Mr. Toor's rate of $350 per hour, and Mr. Bailess' rate of $300 per hour. As stated above, the results in the case are a reasonable compromise given the factual and legal disputes presented. The court does not believe that the proposed fees are rendered unreasonable by anything related to the attorney's expectations at the outset of the case, "time limitations" involved in the matter, the "undesirability" of the case, or the relationship between plaintiffs and their counsel. Accordingly, the court finds the award of $45,000 for attorneys' fees, costs and litigation expenses to be reasonable.

III. Conclusion

Based on the foregoing analysis, the court ORDERS that the parties' joint motion to approve the settlement be, and it hereby is, granted. The court further ORDERS that this action be, and it hereby is, dismissed.

The Clerk is directed to terminate this case and remove it from the court's active docket. The Clerk is also directed to transmit copies of this order to all counsel of record and any unrepresented parties.

Enter: December 4, 2018

_____
John T. Copenhaver, Jr.
Senior United States District Judge